IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| STEVE ANDREWS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:12-cv-275 (MTT) |
| | : | |
| CAROLYN W. COLVIN, | : | SOCIAL SECURITY APPEAL |
| | : | |
| Defendant. | : | |
| _____ | : | |

### RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Steve Andrews' claim for a period of disability insurance benefits under the Social Security Act. In support of his request for remand, Plaintiff argues that the Administrative Law Judge (ALJ) erred by (1) improperly discounting Plaintiff's treating physician's medical opinions, and (2) improperly assessing Plaintiff's credibility regarding his limitations. Because substantial evidence does not support the reasons provided by the ALJ in discounting Plaintiff's treating physician's opinion and Plaintiff's credibility, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings.

### BACKGROUND

At the time of the hearing before the ALJ, Plaintiff was fifty years old and suffered from lower back, neck, and leg pain as well as cholesterol, depression, and spasms. AR 24-27, 63 (Docs. 7-2, 7-4). Plaintiff graduated high school and previously worked as a gate guard, motor vehicle assembler, and hand packager. Id. at 24, 33 (Doc. 7-2). Plaintiff worked for his former employer for a total of nearly thirty years. Id. at 26. Prior to receiving a period of disability benefits from June 2003 through April 2005, Plaintiff worked for the employer on an assembly

1

line. Id. at 23, 46. Plaintiff then returned to work for the employer as a security gate guard, which Plaintiff describes as a position primarily reserved for injured workers. Id. at 30. Plaintiff contends that, because his pain became overwhelming, he ceased working in April 2008. Id. at 24-26.

On July 28, 2008, Plaintiff filed an application for a period of disability and disability insurance benefits. Id. at 42. Plaintiff's application was denied initially and upon reconsideration. Id. Following a hearing before the ALJ, a written decision finding Plaintiff not disabled was issued. Id. at 53. The Appeals Council declined to review the decision. Id. at 1. Thereafter, on July 12, 2012, Plaintiff filed this appeal. Doc. 1.

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought pursuant to the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the

evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). See also Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. Id.

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no…presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. Id.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of

such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must proceed to evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## DISCUSSION

The Commissioner's decision must be reversed and remanded because the ALJ's decisions to discount the medical opinions of Plaintiff's treating physician, Dr. Earls, and to discount Plaintiff's credibility are not supported by substantial evidence. Despite the ALJ's efforts to discredit Dr. Earls' opinions and Plaintiff's credibility, the reasons given for the ALJ's determinations are not supported by substantial evidence.

### The ALJ's Findings

At step one of the sequential evaluation process, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 24, 2008. AR 44 (Doc. 7-2). At step two, the ALJ determined that Plaintiff suffered from the severe impairment of lumbar post laminectomy secondary to degenerative lumbar disc disease status post fusion at L3-4. Id. At step three, however, the ALJ found that Plaintiff's impairments did not, alone or in combination, meet or medically equal any of the impairments listed in Appendix 1 to Subpart P

of Part 404 of Chapter 20 of the Code of Federal Regulations (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Id. Consequently, but before moving to step four, the ALJ proceeded to consider Plaintiff's RFC.

The ALJ found that Plaintiff had the RFC to perform light work with the following exceptions: Plaintiff should have the opportunity to alternate sitting and standing up to once every half-hour; he can lift/carry twenty pounds occasionally and ten pounds frequently, he should not operate foot controls; he can occasionally balance, kneel, stoop, crouch, or crawl; and he should not work on ladders, ropes, scaffolds, or at unprotected heights. Id. at 45.

At step four, the ALJ determined that, despite his limitations, Plaintiff could perform his past relevant work as a gate guard. Id. at 51. The ALJ nevertheless proceeded to step five and found that there were additional jobs that existed in significant numbers in the national economy that Plaintiff could have performed based on his age, education, and work experience. Id. at 52-53.

## The Treating Physician's Opinion

Plaintiff contends that he ALJ erred by discounting Plaintiff's treating pain specialist, Dr. Earls. Specifically, Plaintiff contends that the ALJ did not adequately support his decision to give Dr. Earls' opinions little weight. Although the ALJ attempted to provide good cause for discounting Dr. Earls' opinions, his decision to discount Dr. Earls' opinions is not supported by substantial evidence.

In determining whether a claimant is disabled, the ALJ must evaluate every medical opinion in the record and weigh each opinion. 20 C.F.R. § 404.1527(b)-(c). The ALJ must state with particularity the weight given to the different medical opinions and the reasons for the assigned weight. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).  Absent "good

cause" to the contrary, the ALJ shall give the medical opinions of treating physicians "substantial or considerable weight." Lewis v. Callahan, 125 F.3d 1463, 1440 (11th Cir. 1997). Good cause exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. Phillips, 357 F.3d at 1241. An ALJ may disregard a treating physician's opinion by showing good cause, but the ALJ must clearly articulate his reasons for doing so. Phillips, 357 F. 3d at 1240-41. The ALJ's finding of good cause must be supported by substantial evidence. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Additionally, "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." SSR 96-6p.

In this case, the ALJ's reasons for discounting Dr. Earls' opinions are not supported by substantial evidence. The overwhelming evidence in the record shows that Plaintiff suffered from significant spinal problems, and despite attempts to work through the pain, the pain persisted such that Plaintiff felt he could no longer work. Plaintiff's back, leg, and neck problems began in 1994 when he injured his back in a work related accident. AR 323 (Doc. 7-7). Plaintiff continued to work until 2002 when he again injured his back. Id. In 2004, Plaintiff underwent back surgery, including a wide L3 laminotomy; a facetectomy; a foraminal decompression posterior lateral interbody fusion with peek cages, BMP, autologous bone, and 3D pedicle screws at L3 and L4 with small cross link; and, a posterior lateral fusion with a combination of BMP, autologous bone, and osteophyle resulting in a 360 degree fusion. Id. Plaintiff returned to work as a security gate guard in 2005, and continued to work until April 24, 2008, his alleged onset date. AR 24-25 (Doc. 7-2).

Dr. Earls was Plaintiff's treating pain specialist both before and after Plaintiff's alleged onset date. In April 2007, Dr. Earls reported that a lumbar discogrophy and post-discogram CT scan showed a slight posterior tear at the L5-S1 level, an annular tear at L2-3, and an annular tear with disc protrusion at L5-S1. AR 405 (Doc. 7-8). In early April 2008, Dr. Earls reported that Plaintiff suffered diminished pinprick involving the right anterior thigh as well as the right foot, decreased range of motion of the back in all directions, more pronounced back pain with tenderness and spasm involving the lumbosacaral paravertebrals, moderate SI joint tenderness bilaterally, and moderate to severe sciatic notch tenderness bilaterally right more so than left. Id. at 389. Dr. Earls reported that he believed Plaintiff had reached maximum medical improvement and strongly suggested medical retirement. Id.

Dr. Earls also reviewed the results of MRIs that were taken of Plaintiff's lumbar spine and cervical spine in February 2008. Id. The MRI of the lumbar spine revealed moderate central canal stenosis at L2-3 and L4-5 due to bulging and facet arthropathy, disc bulging at L5-S1 abutting against the ventral aspect of the sac causing slight impression of the sac, foraminal narrowing bilaterally at L4-5 due to disc bulging, and end plate spondylosis with mild foraminal stenosis at L5-S1 bilaterally. Id. The MRI of the cervical spine revealed congenitally small spinal canal due to short pedicles, disc bulging at C5-6 causing slight impression upon the ventral aspect of the cord, and disc bulging at C3-4 abutting the ventral aspect of the cord. Id. Additionally, EMG nerve conduction studies revealed lumbar radiculopathy bilaterally along the L5-S1 distribution. Id.

Three weeks later, Plaintiff returned to see Dr. Earls. Id. at 383. Plaintiff's condition had not improved, as Plaintiff continued to suffer a decreased range of motion in his back in all directions, more pronounced back pain, significant SI joint tenderness, and moderate sciatic

notch tenderness. Id. at 385. Plaintiff complained of significant pain even when sedentary. Id. At that point, Dr. Earls formally removed Plaintiff from the workplace, emphasizing that Plaintiff had reached maximum medical improvement. Id.

Prior to seeing Dr. Earls in April 2008, Plaintiff was seen by his primary care physician, Dr. Early, in March 2008. Id. at 357-62. Plaintiff complained of increased back pain. Id. Dr. Early reported that Plaintiff suffered bilateral shoulder and left knee crepitations as well as swelling and inflammation in the left knee. Id. Dr. Early also reported that Plaintiff had point tenderness in various areas, including the neck, which also had swelling the size of a cotton ball. Id.

Following Dr. Earls' decision to remove Plaintiff from the workplace, Dr. Earls continued to treat Plaintiff. Plaintiff consistently had decreased pinprick in his right thigh and foot, mild SI joint tenderness and moderate sciatic notch tenderness bilaterally, and 1+ right knee jerk. Id. at 371-82; AR 471-87, 499-512 (Doc. 7-9). On October 21, 2009, Dr. Earls reported that caudal steroid injections reduced Plaintiff's leg pain and burning sensation by 30%, but Plaintiff's back pain persisted. AR 480 (Doc. 7-9). Despite Plaintiff consistently describing his pain as 7 or 8 out of 10, with 10 being the worst pain experienced, Dr. Earls noted that Plaintiff's pain was tolerable on his drug regime including Percocet, Cymbalta, and Ambien. Dr. Earls also consistently described Plaintiff as "doing well." Dr. Earls never reported that Plaintiff could return to work, however.

Dr. Earls completed two forms describing his opinions regarding Plaintiff's medical condition and limitations. A form completed by Dr. Earls in May 2009 stated that Plaintiff could only work three hours in an eight hour workday while sitting/standing for thirty minutes each at a time, needed to lie down two or three times a day, needed a cane to ambulate, and would miss

work four times a month. AR 465-70. A form completed in January 2010 stated that Plaintiff could only work one hour a day while standing/sitting for fifteen minutes at a time and that Plaintiff suffered from moderate to severe pain. Id. at 463-64. Dr. Earls also stated that Plaintiff's "pain can be kept at a tolerable level for limited periods of time as long as he can sit, stand, or lay down as needed." Id. at 464 (emphasis in original).

      The ALJ gave little weight to Dr. Earls' opinions on the forms and his opinion that Plaintiff should have been removed from work on the alleged onset date. The ALJ explained that he gave little weight to Dr. Earls' opinions because the opinions were inconsistent with his own records and the longitudinal evidence, and because the opinions were largely based on Plaintiff's subjective complaints. The ALJ noted that nothing in Dr. Earls' notes indicated that Plaintiff needed assistance ambulating, that there is a lack of clinical or diagnostic findings that support Dr. Earls' opinions, and that the treatment notes of Plaintiff's treating neurosurgeon, orthopedist, and primary care physician did not support Dr. Earls' opinions.

      Despite the ALJ's attempt to discredit Dr. Earls' opinions, substantial evidence does not support the decision to give Dr. Earls' opinions little weight. As indicated above, the MRIs and EMG constitute objective clinical findings showing that Plaintiff suffered significant back injuries throughout his spine. Additionally, Dr. Earls' treatment notes include objective medical findings regarding pinprick, joint tenderness, and decreased range of motion in the back at the time of Plaintiff's alleged onset date. The ALJ's reliance upon the treatment notes of Plaintiff's treating neurosurgeon and orthopedist in discrediting Dr. Earls' opinions is unfounded because those treatment notes occurred at least three year prior to Plaintiff's alleged onset date. Plaintiff subsequently returned to work, and Dr. Earls' treatment notes show that Plaintiff's condition continued to deteriorate. Moreover, although the ALJ states that Dr. Earls' opinion is not

supported by Plaintiff's primary care physician, Dr. Early's assessment just prior to Plaintiff's alleged onset date is consistent with Dr. Earls' findings.

Upon review of the record, the Court cannot conclude that substantial evidence exists to discredit Dr. Earls' medical opinion. The ALJ's attempt to show good cause for discrediting Dr. Earls' opinions is not sufficiently supported. As such, the decision does not comply with SSR 96-2p, which requires an ALJ to give a treating source's medical opinion substantial weight if the opinion is well supported and not inconsistent with the other evidence. Because the ALJ failed to show good cause, supported by substantial evidence, for discrediting Dr. Earls' opinions, the case must be remanded.

### Plaintiff's Credibility

In determining that Plaintiff is not disabled , the ALJ appears to rely heavily upon a finding that Plaintiff lacks credibility. Although this Court cannot make credibility determinations or substitute its judgment for that of the Commissioner, a credibility determination must be supported by substantial evidence. See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995). Because the ALJ misrepresented Plaintiff's daily activities and relied upon suspicions of exaggeration irrelevant to the instant time period, the ALJ's credibility determinations are not supported by substantial evidence.

The ALJ stated that because Plaintiff could perform light household chores, Plaintiff could perform at least light exertional work. Participation in routine activities for a short period of time does not necessarily mean that a plaintiff can perform light work. See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). Although the ALJ did not exclusively rely on Plaintiff's ability to perform light household chores in finding him disabled, the ALJ misrepresented Plaintiff's daily activities by equating Plaintiff's light household chores with

light work. Plaintiff testified at the hearing that he spends time at home lying down or doing "housework or whatever, you know, duties around the house." AR 28 (Doc. 7-2). Plaintiff did not testify at the hearing regarding what those duties were. On his function report, Plaintiff stated that he did some indoor chores, but that they took him nearly an hour to complete and he only did them every two to three days. AR 240 (Doc. 7-6). Although the ALJ noted that Plaintiff's mother stated that he routinely performed daily activities, Plaintiff's mother merely stated that Plaintiff attempts to do inside chores for thirty minutes, two or three time a week. Id. at 248. Accordingly, the evidence cited by the ALJ does not suggest that Plaintiff is capable of performing light work as defined in the regulations.

The ALJ also relied upon evidence that Plaintiff was exaggerating his symptoms. The ALJ cited two reports indicating that Plaintiff exaggerated his symptoms, both of which do not constitute substantial evidence. One report by Dr. Holliday, completed four years prior to Plaintiff's alleged onset date, indicated that "there may be secondary gain issues here." AR 334 (Doc. 7-7). Not only was this report completed four years prior to the relevant time period, but Dr. Holliday continued to treat Plaintiff without further indication that there were secondary gain issues. Moreover, Plaintiff returned to work after the report was completed. The other report, completed three years prior Plaintiff's alleged onset date, stated that Dr. Phillips suspected symptom exaggeration and lack of sincere effort. Id. at 327. Dr. Phillips' report too was completed years before the relevant time period, and Plaintiff subsequently returned to work. There are no reports of exaggeration or malingering during the relevant time period. Moreover, Dr. Earls and the State psychologist both stated that there was no suspicion of exaggeration. AR 465-70, 418 (Doc. 7-8).

Additionally, the decision does not comply with SSR 96-7p, which states that a good work history should weigh in a plaintiff's favor when assessing credibility. Although the ALJ acknowledges Plaintiff's good work history, he appears to discount the work history based on his conclusion that Plaintiff continued to exaggerate his symptoms. As discussed above, substantial evidence does not support the ALJ's finding that Plaintiff exaggerated his symptoms. Accordingly, it appears that the ALJ failed give sufficient weight to Plaintiff's good work history when assessing Plaintiff's credibility.

## CONCLUSION

The ALJ failed to provide sufficient reasons for discounting Plaintiff's treating physician's opinions, and the ALJ's decision to discount Plaintiff's credibility is not supported by substantial evidence. Accordingly, it is hereby **RECOMMENDED** that the Commissioner's decision be **REVERESED and REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative action. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 16th day of August, 2013.

        s/ Charles H. Weigle
        Charles H. Weigle
        United States Magistrate Judge